IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID J. ROBERTSON, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| vs. ) | |
| ) | Civil Action No. 06-467 |
| EDWARD KLEM, Superintendent, and ) | |
| THE DISTRICT ATTORNEY OF THE COUNTY ) | Judge Terrence McVerry/ |
| OF FAYETTE and THE ATTORNEY GENERAL ) | Magistrate Judge Amy Reynolds Hay |
| OF THE STATE OF PENNSYLVANIA, ) | |
| ) | |
| Respondents ) | |
| ) | |

## REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is respectfully recommended that the habeas corpus petition filed pursuant to 28 U.S.C. § 2254 be denied and that a certificate of appealability be denied.

II. REPORT

David J. Robertson ("Petitioner") is a state prisoner, convicted of two counts of conspiracy to commit murder, involving the deaths of two people.  Petitioner now seeks federal habeas relief pursuant to 28 U.S.C. § 2254.  Because he has failed to show that his trial counsel was ineffective for failing to call Trooper Custer to testify about the alibi of Petitioner's alleged co-conspirator, his claim for relief fails.  In addition, although he argued that there was insufficient evidence to establish more than one conspiracy to kill two people as opposed to two separate conspiracies to kill one victim each, he has failed to establish that the Superior Court's disposition of his insufficiency argument was contrary to or an unreasonable application of Supreme Court precedent.

## A. Factual and Procedural History

Petitioner was charged with 2 counts each of first and third degree murder and 2 counts of conspiracy to commit murder.  The Commonwealth's theory of the case was that Petitioner entered into agreements with Gerald Powell to kill the two victims, Mr. and Mrs. Povlik, who apparently were drug dealers and who had supplied drugs to Petitioner previously.   The prosecution essentially alleged that Petitioner had acquired the gun for Gerald Powell to kill the Povliks.  There were five days of testimony, wherein witnesses testified that Petitioner made inculpatory statements to the effect that he had obtained the gun but that Powell did the shooting, the jury convicted Petitioner of two counts of conspiracy but acquitted him of both murder counts.  A witness also testified that shortly before the Povliks were murdered, Petitioner had asked the witnesses to borrow a .22 caliber, nine-shot revolver and that Petitioner returned the gun the next day.  Experts testified that the gun fragments in the Povliks were consistent with a .22 caliber gun.  In addition, there were a total of nine shots fired into both victims.  The prosecutor offered as a motive that Petitioner was angered by the Povliks' refusal to sell Petitioner illegal pharmaceutical drugs.  Powell stood trial approximately eight months after Petitioner's trial.  Doc. 6-1 at 5.  Powell was apparently charged with 2 counts of murder and 2 counts of criminal conspiracy to commit murder.[1]  Mr. Powell presented the testimony of witnesses to establish an alibi.  The jury acquitted Mr. Powell of all counts.

---

[1] The Court takes judicial notice of the dockets of the Court of Common Pleas of Fayette County, which reveal that Powell was charged with 2 counts of murder and 2 counts of criminal conspiracy to commit murder at Fayette County Common Pleas Court Docket No. CP-26-CR-0000638-2001.  Those dockets are available at:

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=4&dkt=7345649&arch=0&ST=2/27/2007%202:36:10%20PM

Petitioner raises essentially two claims in the present habeas corpus petition. First, he alleges that his trial counsel was ineffective for failing to investigate and learn the fact that Gerald Powell had a credible alibi for the time of the murders. Doc. 6-1 at 5. Second, Petitioner claims that there was insufficient evidence to sustain the existence of two conspiracies, essentially implying that, at most, the record established only one conspiracy to kill the two victims. Doc. 6-1 at 12.

### B. Applicable Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was effective April 24, 1996. Because Petitioner's habeas petition was filed after AEDPA's effective date, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000)

A judgment of conviction carries with it a presumption of regularity in federal court. Meyers v. Gillis, 93 F.3d 1147, 1151 (3d Cir. 1996)("On collateral attack. . . ., the state receives the presumption of regularity and all reasonable inferences.") (quoting Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993)); Sandoval v. Tinsley, 338 F.2d 48, 50 (10th Cir. 1964); Schlette v. California, 284 F.2d 827, 833-34 (9th Cir. 1960)("A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."). Given this presumption of regularity, it is Petitioner's burden to establish, at the very least by a

preponderance of the evidence,[2] that his constitutional rights were violated. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997)("On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated.").

Where the State courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the State courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court expounded upon the standard found in Section 2254(d)(1). In Williams, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where that State court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the

---

[2] To the extent that Petitioner is challenging the factual determinations of the State Courts, he has a burden to rebut the presumption of correctness of those factual findings by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1).

petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the State court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197. Under the "contrary to" clause, the relevant universe of analysis is restricted to the holdings of United States Supreme Court cases as they existed at the time of the State court decision. Williams, 529 U.S. at 412. In contrast, under the "unreasonable application" clause, federal habeas courts may consider lower federal court cases in determining whether the State court's application of Supreme Court precedent was objectively unreasonable. Matteo, 171 F.3d at 890.

### C. Discussion

#### 1. Ineffectiveness claim

The first issue Petitioner raises is an allegation that his trial counsel was ineffective.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the defendant must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). In reviewing counsel's actions, the court presumes that counsel was effective. As the Supreme Court has declared:

> [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

5

Strickland, 466 U.S. at 689.   There is no one correct way to represent a client and counsel must have latitude to make tactical decisions.  Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990)("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained."). Because the Strickland test is one of objective reasonableness, it does not matter if counsel actually considered the course taken or foregone to determine whether the actions or omissions were objectively reasonable.  As the Court of Appeals for the Eleventh Circuit has explained:

> To uphold a lawyer's strategy, we need not attempt to divine the lawyer's mental processes underlying the strategy. . . . our inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one. . . .
> We look at the acts or omissions of counsel that the petitioner alleges are unreasonable and ask whether some reasonable lawyer could have conducted the trial in that manner. Because the standard is an objective one, that trial counsel (at a post-conviction evidentiary hearing) admits that his performance was deficient matters little.

Chandler v. United States, 218 F.3d 1305, 1316 n.16 (11th Cir. 2000)(internal citations and quotation marks omitted), cert. denied, 531 U.S. 1204 (2001).  See also Strickland 466 U.S. at 689 (one claiming ineffectiveness must overcome the presumption that, under the circumstances, the challenged action "**might** be considered sound trial strategy.") (emphasis added).  In light of the foregoing, the Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(*quoting* United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391. In addition, in undertaking a prejudice analysis, the Court properly considers the strength of the evidence against the defendant because "... a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (quoting Strickland, 466 U.S. at 696), cert. dismissed, 527 U.S. 1050 (1999).  The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987).  As a result, if a petitioner fails on either prong, he loses.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted);  Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

     The first issue Petitioner raises actually has had several incarnations.  In the PCRA petition, the issue was raised as "Trial counsel rendered ineffective assistance when he failed to investigate, interview, and procure testimony that Gerald Powell, had an alibi for the time of the murders." Doc. 8-16 at 3.  However, the PCRA Court conducted a hearing at which Petitioner's trial counsel, Attorney McCue, testified and he explained why he did not call the witnesses who could have testified to Powell's alibi, which was essentially because all of those witnesses were unreliable drug-involved individuals who had a friendly relationship with Powell and hence a motive to lie in favor of Powell and hence, a motive to lie to potentially implicate Petitioner.  Doc. 8-17 at 25 -33 to  Doc. 8-18 at 1 - 51 (PCRA testimony of Attorney McCue).  The State Courts

found that trial counsel's actions in reviewing the discovery information, and in not calling such witnesses based on assessments of their potential liabilities posed to Petitioner as well as their non-relevance to the defense strategy were reasonable and hence no ineffectiveness was established.  See, e.g., Doc. 8-20  at 6 ("Attorney McCue was concerned that Tressler, as Powell's girlfriend, would have protected Powell at appellant's expense."); id. at 7 ("With regard to Powell, Attorney McCue testified that Powell was not a reliable witness, was a hard-core drug user, and might lie to protect himself.").  Having lost in the State PCRA court, after it conducted an evidentiary hearing where Attorney McCue testified, as to his reasons for not calling Powell or Powell's alibi witnesses to testify in Petitioner's trial, and apparently trying to avoid the PCRA Courts' reasonable conclusion regarding this claim, Petitioner attempted to change tacks, and in his appellate brief to the Superior Court did not so much argue that counsel was ineffective for failing to call Powell's alibi witnesses, whom Attorney McCue reasonably deemed to have posed risks to Petitioner's defense given their loyalty to Powell, but argued instead that trial counsel was ineffective for failing to call Trooper Custer who could have testified that Powell had a credible alibi, which was confirmed by others.  Doc. 6-1 at 8 (quoting from Petitioner's PCRA Appellate Brief to the Superior court).   It is important to note that Petitioner states in the PCRA Appellate Brief that "Petitioner conceded that counsel might have reasonably concluded that Powell's alibi witnesses presented risks concerning credibility, reliability and so forth.  However, none of these concerns is present in the opinion testimony of Trooper Custer.  Counsel should have known and investigated that Powell had a credible alibi, and elicited this fact through Trooper Custer."  Doc. 6-1 at 8 - 9.  This is the same way Petitioner presents the issue in the present habeas petition. Doc. 11 at 6 - 7, ¶ 13 ("Trial counsel rendered ineffective assistance of counsel by his failure to investigate, which in turn would have led to opinion testimony from Pennsylvania State Trooper

James Custer that Petitioner's alleged coconspirator has a credible alibi for the time of the murders.")

However, it does not appear that this precise claim of trial counsel's ineffectiveness for failing to investigate and call Trooper Custer was ever presented in the PCRA court and hence, under state law, the claim was waived.  Commonwealth v. Agie, 296 A.2d 741, 741 (Pa. 1972)("We have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal to this Court.")(citations omitted); Commonwealth v. Steffish, 365 A.2d 865 (Pa. Super. 1976); Commonwealth v. Perea, 381 A.2d 494, 496 (Pa. Super. 1977)("The reason our review is confined to the one issue is because the other issues were not raised in the trial below or in post-verdict motions. The appellate courts of Pennsylvania have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal.")  Accordingly, this court finds this precise issue procedurally defaulted.

Even if not procedurally defaulted, this court finds, in the alternative, that Petitioner failed to carry his burden to rebut the presumption of Attorney McCue's effectiveness, i.e., that Attorney McCue acted reasonably.  This court reviewed the PCRA transcripts and, since this precise issue was not raised in the PCRA petition or elsewhere in the PCRA court, it should come as no surprise that not one question was asked of Attorney McCue at the PCRA hearing concerning Trooper Custer and whether Attorney McCue knew about Trooper Custer, and if he had, why he had not chosen to call Trooper Custer to testify in Petitioner's trial.  In light of the presumption of counsel's effectiveness, in the absence of some evidence to rebut the presumption, and there is none, in fact, the record is silent with respect to Attorney McCue's actions/inactions regarding Trooper Custer, the silence of the record with respect to this claim redounds to the detriment of the Petitioner herein as it is his burden to affirmatively show that counsel was ineffective. Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996)("There is thus every reason to believe that petitioner's

9

appellate counsel made an informed judgment call that was counsel's to make. Even if the record did not provide this affirmative assurance, however, we would be required to so assume unless the petitioner has come forward with evidence to the contrary sufficiently probative to overcome the 'strong presumption' required by Strickland."); Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of counsel's effectiveness]. Therefore, 'where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.' Williams, 185 F.3d at 1228[.]"), cert. denied, 531 U.S. 1204 (2001). In this respect, Petitioner, having failed to prove primary facts, is attempting, contrary to Schlette v. California, supra, to have the court infer counsel's ineffectiveness from a silent record. This, the court cannot do.³ Thus, Petitioner has failed to establish the first Strickland prong, namely that counsel committed errors.

Moreover, even if this court were to review this claim de novo, assuming for the sake of argument that Petitioner could overcome his procedural defaults of this issue,⁴ we would find no prejudice. At most, if Trooper Custer's testimony had been presented, it would have, if credited by the jury, established that Powell could not have shot the victims on the night of the shooting.

---

³ Nor, having failed to develop this claim in the PCRA hearing, is Petitioner entitled now in federal court to a hearing to attempt to rectify this absence in the record as he fails to meet the standards contained in 28 U.S.C. § 2254(e)(2).

⁴ See, e.g., Quispe v. Hildreth, No. 2:03-cv-1170, 2006 WL 2788979, *3 (D. Nev. Sept. 25, 2006) wherein the court held that

> This [AEDPA] deferential standard of review applies, however, only when the state court actually decides the claim under review on the merits. Where, as in the present case, the state court rejects a claim on the basis of procedural default without reaching the merits, the AEDPA standard of review does not apply if the federal court reaches the merits; and the claim instead is subject to de novo review on federal habeas review.

Such testimony would have done nothing to dis-establish that at some time prior to the time of the shooting, Petitioner and Powell entered into agreements to kill the victims, and that they agreed that Petitioner would supply the gun to Powell. The crime of conspiracy was completed upon entering into the agreements and the obtaining of the gun by Petitioner,[5] which the jury obviously credited given their verdict of guilt as to the conspiracy charges. Hence, this court finds that the failure to present Trooper Custer's testimony as to Powell having a credible alibi for the time of the killings did not prejudice Petitioner with respect to the conspiracy charges of which he was found guilty.[6]

Accordingly, for any of the foregoing reasons, Petitioner fails to establish entitlement to relief on the basis that Attorney McCue allegedly rendered ineffective assistance of counsel for

---

[5] The PCRA Court well summarized the law of conspiracy in Pennsylvania:

> It is well settled in Pennsylvania that the crime of conspiracy to commit murder does not merge with the substantive crime of murder. Therefore, conspiracy to commit a crime and the underlying crime itself are two entirely separate offenses with separate elements required for each. The mere fact that an accused is acquitted of the underlying crime is irrelevant to his guilt on the conspiracy charge. In Pennsylvania, a person is guilty of conspiracy when with the intent of promoting or facilitating the commission of a crime, he (1) agrees with another person or persons that they or one or more of them will engage in conduct which constitutes the crime, or an attempt or solicitation to commit such crime, or (2) agrees to aid another person or persons in the planning or commission of such crime, or of an attempt or solicitation to commit such crime. 18 Pa.C.S.A. § 903.
>
> In Pennsylvania, in addition to the agreement, a person may not be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired. 18 Pa.C.S. A § 903.(e). Any act that constitutes a substantial step toward the commission of the crime will suffice [for] the required overt act.

Doc. 8-19 at 31 - 32.

[6] In light of Petitioner being acquitted of the two murder charges, and no issue being raised concerning those charges, we do not address whether Attorney McCue's not calling Trooper Custer could have caused prejudice to Petitioner with respect to the murder charges. Whatever Attorney McCue's strategy with respect to the charges of murder, the strategy obviously worked.

failing to investigate the alibi of Powell which should have, according to Petitioner, lead him to call Trooper Custer to testify that Powell's alibi was credible.

        2.        Sufficiency of the Evidence claim

The next issue Petitioner raises is that the "evidence is insufficient to sustain multiple convictions and sentences for two conspiracy counts." Doc. 6-1 at 12. In support, Petitioner quotes from the Pennsylvania conspiracy statute as follows: [i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy as long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." Doc. 6-1 at 13 (quoting 18 Pa.C.S.A. § 903(c)). As Petitioner correctly notes the criminal indictments charged him with two conspiracies, to wit, a conspiracy to kill Mr. Povlik and a conspiracy to kill Mrs. Povlik. The jury found him guilty of two conspiracies and the judge sentenced him for two conspiracies with consecutive sentences on the two charges. Petitioner argues that "[n]o where in the record is there a scintilla of proof that more than a single agreement existed." Doc. 6-1 at 14.

The Superior Court noted that in addressing a sufficiency of the evidence claim, the standard applied is "whether viewing all the evidence admitted at trial in a light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Doc. 8-20 at 14. The Court then went on to quote from 18 Pa.C.S.A. § 903(c) to acknowledge that a person can enter one agreement/conspiracy to commit a number of crimes. The court then noted that

> In determining whether a single conspiracy or multiple conspiracies have been established, we must consider several relevant factors:
> The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue . . . are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

Doc. 8-20 at 15 (*quoting* Commonwealth v. Barnes, 871 A.2d 812, 820 (Pa. Super. 2005). The Court then went on to apply this test, reasoning as follows:

> We note that several of the relevant factors delineated above support appellant's argument: both Edward and Karen Povlik were killed at approximately the same time; they were both shot multiple times using the same firearm; they were both shot and died in the same location, their trailer home; and presumably the same person or persons shot them. However, the central factor here is the number of victims. As we discussed on direct appeal, the jury obviously believed that appellant entered into a [sic] conspiratorial agreement to kill both Karen and Edward Povlik. Although we found appellant's sentencing issue waived, we stated thereafter:
>> Appellant was charged with two separate conspiracies – 1) the planning and executing the crime of criminal homicide in causing the death of Edward James Povlik, and 2) the planning and executing the crime of criminal homicide in causing the death of Karen Marie Povlik. The objective of the first conspiracy was the criminal homicide of Edward James Povlik and the objective of the second conspiracy was the criminal homicide of Karen Marie Povlik.
>
> *Id*. at 13-14. We agree with this reasoning. <u>Using appellant's logic, one agreement to kill twenty people should be punished the same as one agreement to kill one person, because there was only a single overarching conspiracy.</u> We reject appellant's argument. We find that the trial court did not err in imposing consecutive sentences.

Doc. 8-20 at 16 - 17 (underlining added). Petitioner argues that the Superior Court's disposition was contrary to or an unreasonable application of In re Winship, 397 U.S. 358 (1970), because the Superior Court relieved the Commonwealth of carrying its burden of proving that multiple agreements existed. The Superior Court did no such thing. Furthermore, the Superior Court's disposition was neither contrary to nor an unreasonable application of In re Winship because the Superior Court's holding was that the Commonwealth charged two conspiracies, two conspiracies existed with two different goals and there was sufficient evidence presented to find two different conspiracies as is demonstrated by its quoting of the Superior Court's earlier opinion on direct appeal and its conclusion, immediately following the quote that the Superior Court agrees with that Court's earlier reasoning on appeal.

In re Winship essentially held that the Due Process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. In re Winship involved a juvenile delinquent and essentially concerned what standard of proof is required to find that a juvenile is delinquent. The Court held the standard was that of "beyond a reasonable doubt." This court finds that the Superior Court did not apply a rule of law contrary to Winship. In fact, in its recitation of the standard for sufficiency of the evidence it repeated almost verbatim the Winship test. Nor is the Superior Court's disposition contrary to Winship in the second sense, i.e., the two cases have a set of materially indistinguishable facts such that the outcomes of the two must be the same; the two cases are factually dissimilar and consequently legally distinguishable. Neither is the Superior Court's disposition an unreasonable application of the sufficiency of the evidence test announced in Winship. While the underlined language in the portion of the Superior Court opinion quoted above could be construed as supporting Petitioner's contention, this court is not persuaded. The underlined language is simply the Superior Court's *reductio ad absurdum* characterization of Petitioner's argument before them. This characterization was not essential to the Superior Court's holding and hence was dicta. Instead, the Superior Court's narrow holding was that, in applying the totality of the circumstances test as required by In re Winship for a sufficiency of the evidence challenge, the court must determine whether every element of every crime was proven beyond a reasonable doubt. The Superior Court's essential holding was that the record supported the existence of two agreements or two conspiracies, with two different objects, one of which was to kill Mr. Povlik and the second of which was to kill Mrs. Povlik. This finding is supported by the record and is not contrary to or an unreasonable application of In re Winship. In coming to this conclusion this court is mindful that

> [b]y its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little direct evidence of such an agreement. Hence, a conspiracy

> generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced. Indeed, a conspiracy may be proved wholly by circumstantial evidence. Circumstantial evidence tending to prove a conspiracy may consist of a defendant's "relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy." *Collazo*, 732 F.2d at 1205. A conspiracy, therefore, "may be inferred from a 'development and collocation of circumstances'." *Glasser v. United States*, 315 U.S. 60, 80 (1942) *(quoting United States v. Manton*, 107 F.2d 834, 839 (2d Cir. 1939), *cert. denied*, 309 U.S. 664 (1940)). Circumstantial evidence sufficient to support a conspiracy conviction need not exclude every reasonable hypothesis of innocence, provided the summation of the evidence permits a conclusion of guilt beyond a reasonable doubt.

United States v. Burgos, 94 F.3d 849, 857-58 (4th Cir. 1996)(some citations omitted). There is sufficient circumstantial evidence of record in order to permit the jury to have found the existence of two conspiracies, one conspiracy to kill Mr. Povlik and one conspiracy to kill Mrs. Povlik.

Neither is the Superior Court's disposition contrary to or an unreasonable application of Braverman v. United States, 317 U.S. 49 (1942), which is factually and legally distinguishable from the Petitioner's case. In Braverman, the petitioners therein were indicted on seven counts of criminal conspiracy with each of the seven counts charging a conspiracy to violate a separate tax law. Furthermore, the Supreme Court described what had transpired at trial:

> At the close of the trial petitioners renewed a motion which they had made at its beginning to require the Government to elect one of the seven counts of the indictment upon which to proceed, contending that the proof could not and did not establish more than one agreement. In response the Government's attorney took the position that the seven counts of the indictment charged as distinct offenses the several illegal objects of one continuing conspiracy, that if the jury found such a conspiracy it might find the defendants guilty of as many offenses as it had illegal objects, and that for each such offense the two-year statutory penalty could be imposed.
> The trial judge submitted the case to the jury on that theory. The jury returned a general verdict finding petitioners 'guilty as charged', and the court sentenced each to eight years' imprisonment.

Braverman, 317 U.S. at 51. In contrast, in Petitioner's case, Petitioner has not shown that the trial judge submitted this case to the jury on the theory that Petitioner could be convicted of multiple conspiracies even if only one continuous conspiracy were proven solely on the finding that the one

15

continuous conspiracy had several illegal objects.  In fact, a review of the Judge's charge shows that no such theory was presented to the jury.  Doc. 8-9 at 7 - 51 (judge's charge).   Rather, the two indictments each charged a separate conspiracy, each with a separate object  - one agreement to kill Mr. Povlik and a second agreement to kill Mrs. Povlik.  See Doc. 8-18 at 11 (PCRA court's recounting of charges).  See, e.g., United States v. Swingler, 758 F.2d 477, 492 (10th Cir. 1985)("It is also clear that the defendants' attempt to bring this case within the ambit of . . . *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942) is misguided. In *Braverman* the government admitted, both at trial and on appeal, that only one continuing conspiracy had been proven but sought multiple punishments under the same conspiracy statute solely on the basis that the one conspiracy had several illegal objects. 317 U.S. at 51, 63 S.Ct. at 100. No such admission has been made in this case, indeed the government argues that two distinct conspiracies were both proven and recognized by the jury.").  The Superior Court's ultimate disposition is neither contrary to nor an unreasonable application of Braverman and this is so, even if the Superior Court's *reductio ad absurdum* characterization, in dicta, of Petitioner's argument, which it rejected, is assumed to be somewhat inconsistent with Braverman.   The holding, as opposed to the dicta, of the Superior Court was that there was sufficient evidence to find two conspiracies based in part on the fact that there were two different objects of the two different agreements.  This holding is neither contrary to Braverman nor an unreasonable application of Braverman.  Accordingly, Petitioner fails to carry his burden to show entitlement to relief.

      **D.**    **Certificate of Appealability**

Section 2253 of Title 28 U.S.C. generally governs appeals from district court orders regarding habeas petitions.  Section 2253 essentially provides in relevant part that a certificate of appealability, which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253 (C)(2). The Supreme Court has concluded that this statutory language essentially requires the habeas petition to show that "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[.]" Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable that Petitioner has not shown a denial of his constitutional rights. Accordingly, a certificate of appealability should be denied.

III.     CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 21 March, 2007

cc:     The Honorable Terrence F. McVerry
        United States District Judge

        David Robertson
        ET-5062
        SCI Mahanoy
        301 Morea Road
        Frackville, PA 17932

        The Hon. Nancy D. Vernon by Notice of Electronic Filing